IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALBERTO MELLON ROSEMBERT, | : : | |
| Petitioner, | : : | 1:15-cv-0715 |
| v. | : : | Hon. John E. Jones III |
| SUPERINTENDENT LAWRENCE MAHALLY, PENNSYLVANIA STATE ATTORNEY GENERAL, Respondents. | : : : : | |

## MEMORANDUM

### January 3, 2016

Petitioner Alberto Mellon Rosembert ("Rosembert"), a Pennsylvania state inmate, commenced this action on April 13, 2015, with the filing of a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Doc. 1). Rosembert challenges the Judgment of Sentence entered on April 23, 2012, in Court of Common Pleas of Luzerne County Criminal case number CP-40-CR-000198-2011. (*Id.*)

In response to the petition, Respondents filed an answer, memorandum of law and appendices. (Doc. 18). At the direction of the Court, Respondents expanded the record on December 1, 2016, and the petition is now ripe for disposition. For the reasons that set forth below, the petition will be denied.

## I.  <u>STATE PROCEDURAL HISTORY</u>

The following procedural history, which was adopted by the Pennsylvania Superior Court during appellate review, was set forth in the Court of Common Pleas of Luzerne County's opinion addressing Rosembert's petition for collateral review.

> The Defendant, Alberto Mellon Rosembert, was arrested on October 14, 2010 for the following charges:   Corrupt Organizations, 18 Pa.C.S.A. 911(b)(3); Corrupt Organizations; 18 Pa.C.S.A. 911 (b)(1-4); Manufacture, Delivery and Possession with Intent to Deliver a Controlled Substance, 35 Pa.C.S.A. 780-113(a)(3), 7 counts; Criminal Use of a Communication Facility; 18 Pa. C. S. A. 7512(a).

> On January 3, 2012, Attorney David Lampoon was appointed to represent the Defendant.   Thereafter, on April 23, 2012, the Defendant, Alberto Mellon Rosembert, plead guilty to the following offenses before the Honorable Senior Judge Kenneth Brown;  Corrupt Organizations (Count 1); Delivery of a Controlled Substance (Count 4) (Heroin); Delivery of a Controlled Substance, (Count 6) (Heroin). The Defendant, Alberto Mellon Rosembert, waived his right to a presentence investigation and agreed on the record to proceed to immediate sentencing.

> Subsequent thereto, the Honorable Senior Judge Kenneth Brown, sentenced the Defendant as follows:

> Delivery of a Controlled Substance, Count 6: 3-6 years state confinement;

> Delivery of a Controlled Substance, Count 4: 2-4 years state confinement, consecutive to Count 6;

> Corrupt Organizations, Count 1:   21 months to 4 years state confinement, consecutive to Count 6 and Count 4.

The Defendant filed the instant Post-Conviction Collateral Relief Petition (hereinafter Petition) claiming ineffective assistance of counsel seeking to be allowed to withdraw his guilty plea or to have his appellate rights reinstated.

ISSUES PRESENTED

Whether Counsel was ineffective:

(1) In preparation for trial?

(2) In failing to challenge the prior record score used or the weight of the heroin?

(3) In failing to file an appeal to the Superior Court on Defendant's behalf?

(Doc. 18-2, pp. 1-2). The PCRA Court held a hearing on August 28, 2013., and issued an opinion on October 2, 2013, denying relief. (Id. at 4, 9; Doc. 18-3, p.2). Rosembert pursued a timely appeal to the Pennsylvania Superior Court presenting the same issues raised in his PCRA petition. (Doc. 18-3, p. 4). On January 26, 2015, the Superior Court affirmed the PCRA Court's denial of the petition. (Id. at 6). Rosembert filed the instant petition pursuant to 28 U.S.C. 2254 on April 13, 2015.

## II.   <u>**GROUNDS RAISED IN FEDERAL PETITION**</u>

Rosembert pursues the following grounds in his federal petition raised in his PCRA proceedings.

(1)    "Whether trial counsel was ineffective in preparation for trial?

(2)    "Whether trial counsel was ineffective in failing to challenge the prior record score use to convict due to the weight of the heroin?"

(3)    "Whether trial counsel was ineffective in failing to file a [direct] appeal to the Superior Court?"

(4)    Whether trial counsel was ineffective for failing to raise mulitple "unlitigated issues" on appeal and during collateral proceedings?

(Doc. 1, pp. 6-9).

## III.   DISCUSSION

### A.    Exhaustion and Procedural Default

The court shall "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  However, such an application "shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(1)(A)*; see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (stating "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . .  state prisoners must give the state courts one full opportunity to

resolve any constitutional issues by invoking one complete round of the State's established review process).  The state courts must have the first opportunity to redress any claimed violation of a habeas petitioner's federal rights.  *Picard v. Connor*, 404 U.S. 270, 275–76 (1971).  The habeas statute codifies this principle by requiring that a petitioner exhaust the remedies available in the courts of the State, 28 U.S.C. § 2254(b)(1)(A), meaning a state prisoner must "fairly present" his claims in "one complete round of the state's established appellate review process," before bringing them in federal court.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (stating "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts,  . . .  state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established review process); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995); Picard, 404 U.S. at 275 (1971); *Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997).

Relief cannot be granted unless all available state remedies have been exhausted, or there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect the rights of the applicant.  See 28 U.S.C. § 2254(b)(1).  The exhaustion requirement is grounded

on principles of comity in order to ensure that state courts have the initial opportunity to review federal constitutional challenges to state convictions. *See Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000).

"Fairly presenting" a federal claim to the state courts requires the petitioner to present both the factual and legal substance of the claim in such a manner that the state court is on notice that the federal claim is being asserted. *See McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999). Citations to the Constitution or to federal case law can provide adequate notice of the federal character of the claim. *Evans v. Court of Common Pleas*, 959 F.2d 1227, 1232 (3d Cir. 1992). A petitioner may also alert the state courts through "reliance on state cases employing [federal] constitutional analysis in like fact situations," or "assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution." Id. Thus, a federal claim may be fairly presented to the state courts even when the petitioner makes no express reference to federal law. *McCandless*, 172 F.3d at 261.

The federal claims raised in the state courts need not be identical to the claims pursued in federal court. *See Picard*, 404 U.S. at 277 (recognizing that petitioner is entitled to "variations in the legal theory or factual allegations used to support a claim"). But, the exhaustion requirement would "serve no purpose if it

could be satisfied by raising one claim in the state courts and another in the federal courts." *Id.* at 276.  A petitioner has exhausted a federal claim only if he or she presented the "substantial equivalent" of the current claim to the state court. *Id.* at 278; *see also McCandless*, 172 F.3d at 261 (holding that petitioner must present both "factual and legal substance" of claim to state courts).

Rosembert concedes that the "unlitigated" "claims outlined in GROUND 4 of this Petition have not been fully exhausted due to Appellate Counsel's ineffectiveness on the previous appeal." (Doc. 1, pp. 9-11).  Review of the record confirms this concession with regard to the claims of trial court loss of jurisdiction and abuse of discretion, and trial counsel's ineffectiveness in failing to challenge jurisdiction, file a direct appeal, and raise double jeopardy issues. If a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review, the federal court will excuse the failure to exhaust and treat the claims as exhausted. *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); see *Teague v. Lane*, 489 U.S. 288, 297–98 (1989).  Although deemed exhausted, such claims are considered procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 749 (1991); *Lines*, 208 F.3d at 160.  "[F]ederal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fundamental

miscarriage of justice' to excuse his or her default.  *See Coleman v. Thompson*, 501

U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)."  *McCandless v. Vaughn*,

172 F.3d 255, 260 (3d Cir. 1999*); see also Trevino v. Thaler*, 133 S. Ct. 1911,

1917 (2013).

To demonstrate "cause," the petitioner must demonstrate that some objective

external factor impeded his efforts to comply with the state's procedural rule.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986).  To demonstrate "actual prejudice,"

the petitioner must show that the errors worked to his actual and substantial

disadvantage "infecting his entire [proceeding] with error of constitutional

dimensions."  *United States v. Frady*, 456 U.S. 152, 170 (1982).  The miscarriage

of justice exception applies only in extraordinary cases where a "constitutional

violation has probably resulted in the conviction of one who is actually innocent."

*Murray*, 477 U.S. at 496.  "'[A]ctual innocence' means factual innocence, not mere

legal insufficiency*." Bousley v. United States*, 523 U.S. 614, 623 (1998).  This

requires a petitioner to "support his allegations of constitutional error with new

reliable evidence – whether it be exculpatory scientific evidence, trustworthy

eyewitness accounts, or critical physical evidence – that was not presented at trial."

*Schlup v. Delo*, 513 U.S. 298, 324 (1995).

Rosembert fails to establish cause in that he fails to identify an objective external factor that impeded his efforts to comply with procedural rules in presenting these claims to the state courts.  In the absence of cause, the court will not address the issue of prejudice.  In turn, the miscarriage of justice exception is inapplicable because Rosembert has failed to provide new reliable evidence of his actual innocence.

The claims contained in Grounds One, Two and Three are fully exhausted and will be addressed on the merits.

### B.     Claims Adjudicated on the Merits

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), federal courts reviewing a state prisoner's application for a writ of habeas corpus may not grant relief "with respect to any claim that was adjudicated on the merits in State court proceedings" unless the claim (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"[B]ecause the purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice

systems, and not as a means of error correction," *Greene v. Fisher*, — U.S. — , 132 S.Ct. 38, 43 (2011) (internal quotations and citations omitted), "[t]his is a difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citation omitted). The burden is on Rosembert to prove entitlement to the writ. *Id.*

A decision is "contrary to" federal law if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). A decision is an "unreasonable application" of federal law if the state court identified the correct governing legal rule but applied the rule to the facts of the case in an objectively unreasonable manner. *Renico v. Lett*, 559 U.S. 766, 773 (2010). A decision is based on an "unreasonable determination of the facts" if the state court's factual findings are objectively unreasonable in light of the evidence presented to the state court. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

The test for ineffective assistance of counsel is a well settled and firmly established one containing two components. "First, the defendant must show that

counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*  The state courts set forth the following law governing review of ineffective assistance of counsel claims:

> "To obtain relief on a claim of ineffective assistance of counsel, the Petitioner must show (1) the underlying claim is of arguable merit; (2) no reasonable basis existed for Counsel's action or inaction; and (3) counsel's error caused prejudice such that there is a reasonable probability that the proceeding would have been different absent such error.  Commonwealth vs. Dennis.  17 A.3rd 297, 301 (Pa. 2011), citing Commonwealth vs. Pierce, 527 A.2nd 973, 975 (Pa. 1987).
>
> In reviewing any particular claim of ineffectiveness, the Court need not determine whether the first two prongs of this standard are met if the record shows the Petitioner has not met the prejudice prong. Commonwealth vs. Travaglia, 541 Pa. 108, 661 A.2nd 357 (1995) cert. denied 516 U.S. 1121, 116 S.Ct. 931; Commonwealth v. Collins, 888 A.2nd 564 (Pa. 2005).  Further, it is clear that the burden of proving ineffectiveness of counsel rests with the Petitioner because counsel's stewardship of the trial is presumptively effective.  Commonwealth v. Wilson, 543 Pa. 429; 672 A.2nd 293, cert. denied 519 U.S. 915, 117 S. Ct. 364 (1996).
>
> To sustain a claim of ineffectiveness, the Petitioner must prove that the strategy employed by trial counsel "was so unreasonable that

no competent lawyer would have chosen that course of conduct." Commonwealth vs. Williams, 640 A.2nd 1251, 1265 (Pa. 1994).

(Doc. 18-2, pp. 2-3).

The United States Court of Appeals for the Third Circuit has ruled that this standard is not "contrary to" *Strickland*. *Werts v. Vaughn*, 228 F. 3d 178, 203 (3d Cir. 2000). Therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of *Strickland* to [Petitioner's] ineffectiveness claim[s] was objectively unreasonable, *i.e.*, the state court decision evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under *Strickland*," *id.* at 204, or, whether the adjudication of the claims resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings. 28 U.S.C. §§ 2254(d)(1) and (2).

1.   Ground One:  Failure to Prepare for Trial

Rosembert argues that "trial counsel made it very clear to the Defendant as well as on record to the trial court that he was unprepared for trial which is the equivalent of abandonment of representation. Trial counsel's ineffectiveness gave the defendant no choice but to plead guilty as he was told by counsel that he would have no chance at trial due to him being unprepared. Counsel did not have defendant [sic] file and made it clear he could not be an effective lawyer." (Doc. 1, p. 5).

In considering the issue in the context of the PCRA appeal, the Superior Court noted that the PCRA court "thoroughly set forth the applicable law, including the law concerning ineffective assistance claims and rejected Rosembert's instant challenge to trial court's ineffectiveness," and affirmed on the basis that the PCRA court's determination and rational was supported by the record and law.  (Doc. 18-3, p 5).  The PCRA court relied on the following applicable law:

> A Defendant is bound by the statement made during the plea colloquy, and defendant may not later offer reasons for withdrawing the plea that contradict statements made when he pled. Commonwealth v. McCauley, 797 A.2d. 920, 922 (Pa. Super. 2001). Claims of counsel's ineffectiveness in connection with a guilty plea will provide a basis for relief only if the ineffectiveness actually caused an involuntary or unknowing plea.  Id.
>
> The law does not require that a defendant be pleased with the results of the decision to enter a guilty plea; rather "[a]ll that is required is that [appellant's] decision to plead guilty be knowingly, voluntarily, and intelligently made."  Commonwealth v. Moser, 921 A.2d 526, 528-29 (Pa. Super. 2007).

***

The guilty plea colloquy in the instant matter inquired into the following required areas:

> 1.   The Defendant understood the nature of the charges to which he was pleading guilty (NT 18-19, 4/23/12);
>
> 2.   There was a factual basis for the plea (NT 19-29, 4/23/12);

13

3.      The Defendant understood that he had the right to trial by jury (NT 8-10, 4/23/12);

4.      The Defendant was informed that he was presumed innocent until he was found guilty (NT 8, 4/23/12);

5.      The Defendant was aware of the permissible range of sentences and/or fines for the offenses charged (NT 10-12, 4/23/12);

(Doc. 18-2, pp. 3, 4, 6).  Further, Rosembert was apprised of his privilege against self-incrimination, his right to remain silent, and his right to confront the witnesses against him.  (Doc. 21-1, pp. 3-4).

The state court plea colloquy proceedings were in accord with Supreme Court precedent which holds that the Due Process Clause of the Fourteenth Amendment requires that a guilty plea be entered intelligently and voluntarily. *Boykin v. Alabama*, 395 U.S. 238, 242–43 (1969).  Before pleading guilty, a criminal defendant should be advised of "all of his constitutional rights and protections, including the privilege against self-incrimination guaranteed by the Fifth Amendment, the right to trial by jury, and the right to confront one's accusers."  *Hill v. Beyer*, 62 F.3d 474, 480 (3d Cir.1995) (citing *Boykin*, 395 U.S. 242–43). A defendant must show the outcome of the plea process would have been different with competent advice.  *See Lafler*, 132 S.Ct. at 1384 (noting that Strickland's inquiry, as applied to advice with respect to plea bargains, turns on the probability

that, but for counsel's errors, "the result of the proceeding would have been different").

Notwithstanding the above, because of the force of the original plea hearing and the finality associated with a guilty plea, in collaterally attacking a plea of guilty, a defendant "may not ordinarily repudiate" statements made to the sentencing judge when the plea was entered. *Blackledge v. Allison*, 431 U.S. 63, 71, 73 (1977) (citing *Fontaine v. United States*, 411 U.S. 213, 215 (1973). "For the representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." *Id.* at 73-74.

The PCRA Court opined as follows:

> In the instant matter, Defendant's position is that, because trial counsel was unprepared for trial and did not adequately consult him to prepare possible defenses, he felt coerced at the time of his plea hearing to enter a guilty plea. However, at that hearing, the Defendant testified that it was his decision to plead guilty and that he was satisfied with the representation provided by counsel. Consequently, the Defendant is bound by the statements made during the plea colloquy and cannot now offer contradictory reasons for withdrawing his plea. A defendant may not be pleased with the results of entering a guilty plea, but he cannot now obtain relief by claiming he felt pressured by counsel to plead guilty. Commonwealth v. Brown, 48 A.3rd 1275 (Pa. Super. 2012).

However, the record is also clear, that on numerous occasions, trial counsel met with the Defendant (NT 37) and that there were discussions about the case, including the proposed plea offers. Further, trial counsel testified that, in his opinion, trial was not in the Defendant's best interest and that Defendant informed him that he did not want to go to trial, but rather, wanted a better plea offer (NT 41, 54). In line therewith, the Defendant forwarded a letter to trial counsel indicating that a guilty plea was in his best interest and requesting that the plea be accomplished as quickly as possible (NT 41). (Hereinafter all designations "NT" refer to the PCRA hearing of August 28, 2013, and all references to "4/23/1" refer to the guilty plea/sentencing hearing of April 23, 2012).

While trial counsel indicated he would have preferred to have more time to prepare for trial, he testified that he could have tried the case, that the Defendant did not want to go to trial, and further, that he did not pressure the Defendant, nor threaten the Defendant, to take a plea. (NT 46-47). The record reveals that trial counsel consulted with the Defendant on numerous occasions, discussed discovery, potential witnesses, and the damaging testimony which could be anticipated at time of trial. (NT 38-40). Defendant intelligently and knowingly entered the plea after thorough consultation with trial counsel.

During the PCRA hearing, the Defendant testified in response to questions from the Commonwealth's attorney concerning his guilty plea as follows:

Q.     Okay. You can't recall. But you remember entering a plea of guilty that day, right?

A.     Yes, I do, sir. (NT 27)

Q.     As a matter of fact, do you remember during the course of that guilty plea hearing that Judge Kenneth Brown had asked you whether or not you had delivered heroin on certain dates, October 4th, 2010 being one of those dates?

A.     Right.

16

Q.     And do you remember telling Judge Brown, yes?

A.     Right.

Q.     And do you remember Judge Brown asking you whether or not you delivered heroin on other dates?

A.     (No response)

Q.     And do you remember Judge Brown asking you?

A.     Right.

Q.     And do you remember telling Judge Brown, yes?

A.     Right.

Q.     Now, do you remember Judge Brown going through and explaining to you what the elements of a corrupt organization were?

A.     Yes.

Q.     And do you remember Judge Brown telling you what the Commonwealth is required to prove.

A.     Right.

Q.     And do you remember my colloquy saying this Defendant had transported controlled substances from New Jersey to Luzerne County for the purposes of distribution?

A.     Right.
Q.     And do you remember telling Judge Brown yes, I did that?

A.     Yes.
(NT 28-29)

> Q.     Now did you ever during this time – during this time, did you ever tell Judge Brown during the course of this guilty plea colloquy that you were ever dissatisfied with your lawyer?
>
> A.     No.
> (NT 30)

(Doc. 18-2, p. 5).

Based on Rosembert's plea colloquy testimony, and the above testimony taken at the PCRA hearing, the PCRA court determined that Rosembert knowingly and voluntarily entered a plea.  And, because "[a] defendant is bound by the statements made during the plea colloquy, and defendant may not later offer reasons for withdrawing the plea that contradict statements made when he pled[,]" he was prohibited from subsequently claiming that he was coerced into entering a plea.  (*Id.* at pp. 3,6 (quoting *Commonwealth v. McCauley*, 797 A.2d 920, 922 (Pa. Super. 2001)).

The state court's determination that the plea was knowing and voluntary and, as such, counsel was not ineffective, is in accord with, and involves a reasonable application of Strickland and other applicable clearly established United States Supreme Court precedent.  Further, the state court's factual findings regarding the knowing and voluntary nature of the plea are objectively reasonable in light of the state court record.

2.    <u>Ground Two: Failure to Challenge the Prior Record Score</u>
      <u>or the Weight of the Heroin</u>

Petitioner next "asserts that counsel was ineffective for not challenging the

prior record score used or the weight of the heroin, and both affected the eventual

sentence." (Doc. 1, p. 6).   "Whether before, during, or after trial, when the Sixth

Amendment applies, the formulation of the standard is the same: reasonable

competence in representing the accused. *Strickland*, 466 U.S., at 688, 104 S.Ct.

2052.  In applying and defining this standard substantial deference must be

accorded to counsel's judgment. *Id.*, at 689, 104 S.Ct. 2052.  But at different

stages of the case that deference may be measured in different ways." *Premo v.*

*Moore*, 562 U.S. 115, 126  (2011).   A court's role in evaluating counsel's

performance in the context of an early plea is limited to a determination of whether

counsel was manifestly deficient in light of information available to counsel at the

time of the plea negotiation.

> Acknowledging guilt and accepting responsibility by an early
> plea respond to certain basic premises in the law and its function.
> Those principles are eroded if a guilty plea is too easily set aside
> based on facts and circumstances not apparent to a competent attorney
> when actions and advice leading to the plea took place. Plea bargains
> are the result of complex negotiations suffused with uncertainty, and
> defense attorneys must make careful strategic choices in balancing
> opportunities and risks. The opportunities, of course, include pleading
> to a lesser charge and obtaining a lesser sentence, as compared with
> what might be the outcome not only at trial but also from a later plea
> offer if the case grows stronger and prosecutors find stiffened resolve.

A risk, in addition to the obvious one of losing the chance for a defense verdict, is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger. The State's case can begin to fall apart as stories change, witnesses become unavailable, and new suspects are identified.

These considerations make strict adherence to the Strickland standard all the more essential when reviewing the choices an attorney made at the plea bargain stage. Failure to respect the latitude *Strickland* requires can create at least two problems in the plea context. First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy, and it presents questions farther removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel. *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). AEDPA compounds the imperative of judicial caution.

Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect. Strickland allows a defendant "to escape rules of waiver and forfeiture," *Richter*, 562 U.S., at ——, 131 S.Ct. 770. Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of *Strickland*. The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

*Premo*, 562 U.S. 115, 124–26.

In considering whether counsel was ineffective in negotiating the plea and

sentence, the Superior Court "affirmed based on the PCRA court's analysis."

(Doc. 18-3, p. 5).  The PCRA court stated as follows:

> This Court would merely note that the Defendant's sentencing was a
> matter of agreement pursuant to the plea agreement entered into
> between the Defendant and the Commonwealth.    (NT 3-7,
> 04/23/12)(NT 72).   Consequently in that the Defendant received a
> sentence, including the RRR1 minimum, negotiated between the
> parties, and further taking into consideration the guilty plea colloquy
> before the trial judge, this Court finds that the Defendant's claim of
> ineffectiveness based upon prior record score and weight to be
> without merit.  Commonwealth v. Brown, 982 A.2nd 1017 (Pa. Super
> 2009), Commonwealth v. Dalberto, 648 A.2nd 16 (Pa. Super 1994).

(Doc. 18-2, pp. 6-7).  This conclusion is wholly supported by the transcript of the

proceedings.  (Doc. 21-1).  At the inception of the plea and sentencing hearing, the

Commonwealth and defense counsel, thoroughly vetted the negotiated plea

agreement with the court.  Rosembert would benefit by entering a plea of guilty to

only three of the ten counts contained in the information, Counts 4 and 6, which

involved the delivery of heroin, and Count 1 which alleged corrupt organizations.

(Id. at p. 4).  Counsel and the state court discussed the maximum penalties for all

counts which totaled forty years' incarceration and significant monetary fines.

(Id.)  Also discussed were the applicable mandatory minimums.  Based on the

agreement that Count 4 involved the delivery of 4.3 grams of heroin, it was

determined that it carried a mandatory minimum of two years.  Based on the

agreement that Count 6 concerned the delivery of 5.8 grams of heroin, it was

concluded that it carried a mandatory minimum of three years.  The following

exchange demonstrates that the agreed upon heroin weights were clearly beneficial

to Rosembert:

| | |
|---|---|
| The Court: | The other thing I should clarify, Count 4 of the original information has a time frame of January 31 of 2007 to October 14, 2010.  I think Counsel agree that for Count 4, we'd accept the plea on the date of October 14th, 2010, 4.3 grams which is advantageous to him, obviously. |
| Mr. Lampman: | That was the understanding. |
| The Court: | For instance, the Commonwealth alleges on October 8, he delivered 19.5 grams. |
| Mr. Doherty: | Sure. |
| The Court: | Any objection then if we reflect on the record and amendment of Count 4 to reflect the delivery on October 14, 2010 of 4.3 grams of cocaine [sic]? |
| Mr. Doherty: | No. |
| Mr. Lampman: | No objection, Your Honor. |

(*Id.* at 5).  Also discussed was the sentencing range applicable to Count 1, corrupt

organization.  "The standard range for this particular offense is an offense gravity

score of 9 with a prior record score of 4.  The standard range is 21 to 27 months.

22

The Commonwealth and the Defense have agreed on a 21-month range which is in the low end of the standard range.  So, the total—it was agreed upon that Count Number 1 will run consecutive to the preceding counts, which are Count 4 and Count 6, which brings it to a total aggregate of 81 months to 162 months."  (*Id.* at 2).

Lastly, the parties agreed that Rosembert was RRR1 eligible, "which would lead it to a range of 67 months."  (*Id.* at 3).  "RRR1 was created to give eligible non-violent offenders an incentive to behave while incarcerated and participate in crime-reducing programming during incarceration.  Offenders who successfully complete their programming are eligible to receive a reduced minimum sentence.  The ultimate goal of RRR1 is to help offenders remain crime free after release."[1] *Pennsylvania Department of Corrections Recidivism Risk Reduction Incentive 2010 Report*, January 2011.

At the PCRA hearing, counsel testified as follows:

> Q.    Was there a PSI done?
>
> A.    No, there wasn't.
>
> Q.    And did you have a discussion with the defendant about what could be contained in the PSI and whether that would have been helpful to have waited?

---

[1] Act 81 of 2008, which established RRR1, was signed into law on September 25, 2008 and became effective on November 24, 2008.  *Pennsylvania Department of Corrections Recidivism Risk Reduction Incentive 2010 Report*, January 2011.

> A.     I don't think I did.  This was an agreed-upon sentence.  I
> felt confident on what his record score was.  But,
> regardless, it was an agreed-upon sentence that the Judge
> indicated that he was willing to follow.
>
> Q.     And what was the agreed-upon sentence?  Twelve years,
> do you recall?
>
> A.     Well I remember with RRR1 it came down to a 67-month
> minimum.  I believe it was – I think it was 81 to 162
> months before the RRR1 calculations and credit.  What it
> came down to was with RRR1 it was a 67-month
> minimum.  Obviously, Mr. Rosembert wanted a 60-
> month minimum; but he also got, of course, the credit for
> the time served.

(Doc. 21-5, p. 20).

It is clear that the state courts' conclusions, that trial counsel's representation during the plea and sentencing stage was constitutionally adequate, was in complete accord with the deference required by *Strickland* and other applicable United States Supreme Court precedent and was based on a reasonable determination of the facts in light of the evidence presented in the state court proceedings.

### 3.   Ground Three:  Failure to file a Direct Appeal

Rosembert contends that he was "abandoned on appeal, where no appeal was filed on his behalf, although defendant requested that an appeal be filed." (Doc. 1, p. 7).  It is well-settled that counsel's role as advocate requires that he support his client's appeal to the best of his ability.  *Anders v. State of Cal.*, 386 U.S. 738, 744 (1967).  In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court interpreted *Strickland*, as requiring that defense counsel consult with a defendant about whether he or she wishes to appeal a conviction. If that consultation occurs and the defendant does not express a wish to appeal, counsel is not *per se* professionally unreasonable for not filing an appeal.  *Flores-Ortega*, 528 U.S. at 478.  The Court explained, however, that if a criminal defendant expressed a wish to appeal, a defense counsel is professionally unreasonable if he or she fails to do so.  *See id.* at 477 ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable.").

The Superior Court addressed the issue as follows:

> The PCRA court addressed this claim in its Opinion and determined that trial counsel was not ineffective, as the court credited trial counsel's testimony at the PCRA hearing that Rosembert did not, in fact, request counsel to file a direct appeal.  *See* PCRA Court Opinion, 11/13/13, at 7-9.   We agree with the PCRA court's determination, and its rationale is supported by the record and the law;

> therefore, we affirm on that basis…. *See id.*; *see also Commonwealth
> v. Mitchell*, 2014 Pa. LEXIS3366, at *26 (Pa. 2014)(stating that an
> appellate court is "bound by the PCRA court's credibility
> determinations, which are supported by the record….").

(Doc. 18-3, pp. 5, 6).  The PCRA court recognized that the failure to file a

requested direct appeal "denies the accused the assistance of counsel and the right

to a direct appeal…."  (Doc. 18-2, p. 7) (citations omitted).  It further noted that

"[b]efore a court will find ineffectiveness of trial counsel for failing to file a direct

appeal, the appellant must prove that he requested an appeal and that counsel

disregarded this request.  Commonwealth v. Harmon, 738 A.2d 1023 (Pa. Super

1999), appeal denied 753 A.2d 815 (Pa. 2000)."  (*Id.*)  The state court opinions

clearly adhered to the above governing Supreme Court principles.

  With regard to the factual determinations, the PCRA court summarized the

hearing testimony on this issue as follows:  "In the instant matter, the Defendant

testified that he instructed trial counsel to appeal (NT 14-15).  In response to that

allegation, trial counsel testified that the defendant did not ask him to file an

appeal.  (NT 69).  Trial counsel testified that "usually before someone takes a plea,

I explain to them their post sentence rights.  It is something I always explain.  It's

just standard practice."  (NT 68-68).  Further in response to questioning from the

court, trial counsel testified that he did not feel there was a meritorious basis for an

appeal and again reiterated that the Defendant never asked that an appeal be taken.

(NT 76)." (Doc. 18-2, p. 7).

Based on this testimony, the PCRA concluded as follows:

The Court finds that trial counsel was credible in his testimony that he was never requested to file an appeal and further, that the Defendant has failed to convincingly support the contention that a request for an appeal was actually made in this case. This Court holds that there was not an unjustified failure to file a requested direct appeal and therefore the conduct of counsel did not fall beneath the range of competence demanded of attorneys in criminal cases. Commonwealth v. Lantzy, Supra.

As noted above, trial counsel testified that he explains to defendants their post sentence rights prior to taking a plea. It is also noteworthy that the sentencing court specifically set forth the Defendant's post sentence rights…."

***

It should also be noted that trial counsel testified that he did not feel there was any meritorious basis for an appeal after the guilty plea in that the Court had jurisdiction, trial counsel was effective, the Defendant had not received an illegal sentence, but rather had received the sentence that was agreed upon. (NT 76). Commonwealth v. Boyd, 835 A.2nd 812 (Pa. Super 2003); Commonwealth v. Brown, Supra. The Court finds that a rational Defendant would not want to appeal as there were no non-frivolous grounds for appeal and this particular Defendant did not reasonably demonstrate to counsel that he was interested in appealing. Commonwealth v. Touw, 781 A.2d 1250 (Pa. Super 2001) citing Roe v. Flores-Ortega, 528 U.S. 470 (2000).

Therefore, the Court finds that Defendant's final contention that trial counsel was ineffective for failing to file an appeal is without merit.

(Doc. 18-2, pp. 8-9).   The above demonstrates that the state court's application of *Strickland* to this ineffectiveness claim was objectively reasonable, and that the decision was based on a reasonable determination of the facts gleaned from the plea and sentencing transcript, the negotiated and executed plea offer, and the PCRA hearing transcript.

## IV.   <u>CONCLUSION</u>

For the reasons set forth above, the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 will be denied.

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.   A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right.   28 U.S.C. § 2253(c)(2).   "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."   *Miller-El v. Cockrell*, 537 U.S. 322 (2003). Petitioner fails to demonstrate that a COA should issue.

The denial of a certificate of appealability does not prevent Rosembert from appealing the order dismissing his petition so long as he seeks, and obtains, a

certificate of appealability from the court of appeals. *See* FED. R. APP. P. 22(b)(1), (2).

A separate order will enter.